IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

R. BRUCE CARLSON

        Plaintiff/Movant,          21mc0284
                                                      ELECTRONICALLY FILED

        v.

NORTH AMERICAN SPECIALTY
INSURANCE COMPANY,

        Defendant/Respondent.


**MEMORANDUM ORDER**

Before the Court are two motions. The first is a motion to quash subpoena filed by R. Bruce Carlson ("Carlson"). ECF 1. The second is a motion to transfer this matter to the United States District Court for the Southern District of New York filed by North American Specialty Insurance Company ("North American"). ECF 7. Both Motions have been fully briefed making these matters ripe for adjudication. For the reasons that follow, the Court will deny the motion to transfer and will grant the motion to quash.

**I. ABBREVIATED BACKGROUND**

The instant two motions arise out of litigation pending in the United States Bankruptcy Court for the Southern District of New York. The lead bankruptcy case pending in the Southern District of New York is *In re Residential Capital, LLC,* filed at docket number 12-12020, which the parties herein refer to as "*ResCap*". Carlson represents the plaintiffs, and North American is a defendant-insurer in an adversary proceeding (*Rowena Drennen et al. v. Certain Underwwriters at Lloyd's of London, et al.,* Adv. Pro. No. 15-01025-shl (Bankr. S.D..N.Y.)). This adversary proceeding is, at its core, a coverage dispute. North American insured

Residential Funding Company, LLC ("RFC") and has declined coverage to RFC for claims made by a class of mortgage borrowers (the "Kessler class"). The class action was filed in this Court and was litigated for over a decade before any settlements were reached.

Thus, the bankruptcy case in the Southern District of New York essentially grew out of the class action case filed here in 2003 between the several defendant mortgage lenders and the plaintiff class borrowers.

Last week, this Court denied North American's (and other insurance companies') motion to intervene and unseal documents in the aforementioned class action matter filed at 03-cv-0425. ECF 806. The Court found that: (1) the data in the documents North American (and others) sought to unseal contained unique personal identifiers of numerous class members; (2) the documents had already been provided to North American and the other insurance carriers (albeit in redacted form); and (3) if North American (and the other insurers) were dissatisfied with the redacted nature of the documents provided to them, the appropriate forum to seek redress was in the United States District Court for the Southern District of New York – the Court which is presently managing the insurance coverage dispute which stems from the class action filed here (case no. 03-cv-0425).

As noted in last week's Memorandum Order filed at 03-cv-0425, the class members were mortgage borrowers who sued numerous defendants including a financial institution ("CBNV"), ultimately acquired by PNC Bank. The class members alleged that CBNV's lending program violated numerous federal lending statutes (which rendered PNC liable for those alleged violations after it merged with Mercantile Safe-Deposit & Trust Company which had merged with CBNV), as did RFC – another financial institution – which purchased the loans. RFC filed

for bankruptcy in 2012.  PNC was the only remaining Defendant in June of 2013 when the class members sought class certification, which was ultimately granted.

In 2012, RFC voluntarily filed a Chapter 11 Petition in the United States Bankruptcy Court in the Southern District of New York seeking to reorganize its debt.  See case no. 12-12020 (MG).  On June 27, 2013, RFC and the class action plaintiffs (through their attorneys – of which Carlson was one), executed a settlement agreement in the class action matter filed here (03-cv-0425) subject to approval from the bankruptcy court in the Southern District of New York.

As noted by North American in its motion to transfer, the settlement agreement between RFC and the class required RFC to pay up to $56.7 million dollars in cash to the class, it also assigned the class members the right to sue RFC's insurers for a sum up to $300 million dollars. ECF 7, p. 2-3.  North American now seeks the deposition of Carlson to gain a deeper understanding of how the decision to accept the above terms from RFC to settle the class action came about, precisely who received what proceeds from the settlement, as well as other questions related to the mediation that produced the settlement.

## II.  STANDARD OF REVIEW

Rule 45 of the Federal Rules of Civil Procedure states in relevant part:

> (d) Protecting a Person Subject to a Subpoena; Enforcement.
>
> (3) Quashing or Modifying a Subpoena.
>
> (A) When Required. On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
> (i) fails to allow a reasonable time to comply;
>
> (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

>> (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
>
>> (iv) subjects a person to undue burden.
>
> (f) Transferring a Subpoena-Related Motion. When the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances. Then, if the attorney for a person subject to a subpoena is authorized to practice in the court where the motion was made, the attorney may file papers and appear on the motion as an officer of the issuing court. To enforce its order, the issuing court may transfer the order to the court where the motion was made.

Fed.R.Civ.P. 45.

The Advisory Committee Notes to Rule 45 clarify "exceptional circumstances" as follows:

> In the absence of consent, the court may transfer in exceptional circumstances, and the proponent of transfer bears the burden of showing that such circumstances are present. The prime concern should be avoiding burdens on local nonparties subject to subpoenas, and it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions. In some circumstances, however, transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts. Transfer is appropriate only if such interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion.

Fed. R. Civ. P. 45, Advisory Committee Notes, 2013 Amendments.

### III. DISCUSSION

Turning to the matter presented here, the United States District Court for the Western District of Pennsylvania presided for nearly two decades over class action mortgage lending litigation (see 03-cv-0425, and other related cases) which ultimately settled. Presently, the class member plaintiffs seek indemnification from the class action defendants' insurance carriers. As

noted above, the coverage litigation is pending as an adversary action before the United States Bankruptcy Court for the Southern District of New York. North American, one of the insurers in the adversary action in the New York case, wants to depose Carlson, the opposing counsel in that matter, and who represented the class members in the Western Pennsylvania class action and helped them achieve a settlement.[1]

Last week, this Court denied North American's (and other insurance companies') motion to intervene and unseal documents in this Court's class action matter. See ECF 806 in case number 03-cv-0425. As explained at length in that Order, the Court found that: (1) the data in the documents North American (and other insurers) sought to unseal contained unique personal identifiers – such as social security numbers – of numerous class members; (2) the documents had already been provided to North American and the other insurance carriers (albeit in redacted form) in the New York adversary proceeding/coverage litigation; and (3) if North American (and the other insurers) were dissatisfied with the redacted nature of the documents provided to them, the appropriate forum to seek redress was in the Southern District of New York – the Court which is presently managing the insurance coverage dispute/adversary action which evolved from the class action filed here (case no. 03-cv-0425).

Based on the motion to intervene and unseal documents filed in case no. 03-cv-0425, this Court was (and is) able to discern that the insurers sought to work around the redacted documents produced in the New York coverage case. Specifically, the insurers sought to intervene in the (closed) class action here, then unseal and expose the same documents (in an unredacted state) to the public-at-large, without regard to the fact that these documents contain highly personal data of individual class members. The Court denied the insurers' motion to

---

[1] North American claims that attorneys on both sides of the New York adversary case have been subpoenaed and Carlson's motion to quash is one of seven discovery disputes pending before that court. ECF 7, p. 2.

intervene and unseal, noting that if the insurers needed to review the highly personal content of the redacted portions of the documents in New York – which were the same as the sealed documents here – and utilize it in their in pursuit or their defense of a denial of coverage, then the insurers could and should, more appropriately, file a motion with the New York Court to do so. This Court noted that the blatant forum shopping on the part of the insurers would not be countenanced.

Now the Court is presented with two motions which again tie the closed mortgage lending class action lawsuit from Western Pennsylvania to the on-going coverage dispute/adversary action in the Southern District of New York. This time, the former class action plaintiffs' attorney, Carlson, requests this Court's assistance in the form of a motion to quash his deposition in the New York coverage case/adversary action. North American, one of the insurers from last week's dispute and an insurer in the New York coverage case suggests – ironically – that Carlson's motion to quash request be transferred to the Southern District of New York. North American essentially argues that transferring the motion to quash will provide for greater judicial economy because the court in the Southern District of New York will be able to consider Carlson's motion along with six other discovery motions filed in the coverage matter. [ECF 7](ECF 7), p. 1-2.

First, this Court finds that Carlson, by filing his motion to quash in the Western District of Pennsylvania, is not forum-shopping, contrary to what North American alleges in its brief in opposition to Carlson's motion to quash. By law, Carlson was required to file his motion to quash here in the Western District of Pennsylvania, and by law, this Court must quash the subpoena if any of the criteria set forth in Rule 45 are met. Fed.R.Civ.P. 45(d)(3)(A) ("On timely motion, the court for the district where compliance is required must quash or modify a

subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden."). Thus, this Court is an appropriate forum where Carlson's motion to quash may be decided. Before considering whether Carlson's motion to quash should be granted or denied, the Court first considers whether transferring the motion to New York is appropriate.

As "the court for the district where compliance is required," this Court must determine whether to quash or modify the subpoena served on Carlson, and this Court may also choose whether to transfer the motion to quash in lieu of deciding the motion as North American requests. Fed.R.Civ.P. 45.

North American suggests that for purposes of judicial economy, instead of this Court deciding Carlson's motion to quash, this Court should transfer the motion to the Southern District of New York. This Court recognizes that transferring a motion to quash a third-party subpoena may be appropriate in certain situations. The United States District Court for the Eastern District of Pennsylvania summarized the law surrounding when transfer of such a motion can be appropriate:

> A number of courts have either transferred disputes concerning nonparty subpoenas to the district possessing the underlying action or commented on the appropriateness of doing so. *Stanziale v. Pepper Hamilton LLP*, No. M8–85, 2007 WL 473703, at *3 (S.D.N.Y. Feb.9, 2007); *see also In re Digital Equip. Corp*., 949 F.2d 228, 231 (8th Cir.1991) (finding that court that issued deposition subpoenas pursuant to Rule 45 may remit consideration of objections to court where underlying case is pending); *Peterson v. Douglas Cnty. Bank & Trust Co*., 940 F.2d 1389, 1391 (10th Cir.1991) (holding that transfer of motion to quash nonparty subpoena was proper, and stating that "[t]he absence of any language in Rule 45(d) prohibiting transfer of a motion to quash, coupled with this permissive language [in Rule 26] regarding transfer of motions for protective orders which refers to Rule 45 deponents as well as to parties, is enough to validate the [transfer] action ....") (citation omitted); *U.S. v. Star Scientific*,

>  205 F.Supp.2d 482, 488 (D. Md. 2002) (transferring motion to compel compliance with subpoena duces tecum because "materials before the court necessarily represent but one piece of a much bigger puzzle" and "because the [district court conducting the underlying litigation] is better position[ed] to evaluate claims of confidentiality, undue burden, and relevancy involved in this discovery dispute given the complexity and scope of the underlying litigation); *Smithkline Beecham Corp. v. Synthon Pharm. Ltd.*, 210 F.R.D. 163, 169 n. 7 (M.D.N.C.2002) ( "The third-party subpoena route has the added benefit of allowing the court in which the main litigation is pending to make the ruling. This may be particularly appropriate when relevancy of the discovery is a significant issue. . . . The court in which the litigation is pending will be in a better position to decide relevancy issues."); *Devlin v. Transp. Comm. Int'l Union*, No. 95–0742, 2000 WL 249286, at *1 (S.D.N.Y. Mar. 6, 2000) ("There is substantial support in the caselaw, among the commentators, and in the Advisory Committee Note to Rule 26(c) of the Federal Rules of Civil Procedure for the proposition that the court from which a subpoena has issued has the authority to transfer any motion to quash or for a protective order to the court in which the action is pending.").

*Frank Brunckhorst Co. v. Ihm*, No. MISC. 12-0217, 2012 WL 4963757, at *5 (E.D. Pa. Oct. 18, 2012).

North American, in its brief in opposition to the motion to quash, indicates that it "intends to question Mr. Carlson about the multi-year settlement process in the underlying cases (*Community Bank* and *Residential Capital),* which ultimately led to a settlement (the "*Kessler* settlement") involving a cash payment to the Class Plaintiffs from the estate of [RFC]. ECF 6. North American also accuses the "Class Plaintiffs" of "hid[ing] important information about the settlement and the negotiations leading up to it." ECF 6. North American claims to want Carlson to answer the following questions: "How much cash did the Class Plaintiffs receive? How many Class Plaintiffs received payments? Why did the Class Plaintiffs and RFC wait many months before telling the insurance companies about the settlement structure they were discussing? What led the Class Plaintiffs and RFC to agree on a nominal settlement value that was many multiples higher than previous agreements?" Id. North American also wants to

8

question Carlson as to how much of the $300 million dollars in settlement funds from RFC the class plaintiffs actually received.[2]  According to North American, all of the preceding areas of inquiry are best answered by Carlson and the court managing the litigation in the Southern District of New York should be the court that decides whether North American is entitled to answers to those questions.

This Court disagrees.  In fact, North American's insured(s), who North American contends colluded with the class member plaintiffs, is/are equally excellent source(s) of the information sought by North American and can just as easily respond to North American's areas of inquiry.  More to the point, however, Carlson opposes transfer of his subpoena-related motion.  As a result of his opposition, this Court may transfer the motion only in "exceptional circumstances." Fed.R.Civ.P. 45(f).  In this case, North American, as the "proponent of transfer[,] bears the burden of showing that such [exceptional] circumstances are present." Fed.R.Civ.P. 45(f), Advisory Committee Notes (2013 amendments).  To meet its burden, the Court considers if North American has proven: (1) the prime concern of avoiding a burden on Carlson as the subject of the subpoena; (2) transfer is warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when the court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts; and (3) its interests outweigh the interests of Carlson in obtaining local resolution of the motion.  *Id.*

Applying the standard set forth in the 2013 amendments to the Advisory Committee Notes to Rule 45(f), this Court is not persuaded the North American has met its burden and thus,

---

[2] In addition to the above, North American claims it will question Carlson "about the arbitration of damages in the In re Community Bank case, which led to a $24 million damages assessment against PNC (a far cry from the purported '$300 million settlement' with RFC n the same claims)." ECF 6.

transfer is not appropriate here. Although North American set forth its general areas of inquiry for Carlson, Carlson is not a party to the New York coverage litigation. Carlson himself resides in this judicial district and nearly all of the areas of inquiry about which Carlson would be questioned took placed this judicial district. Therefore, it would be more burdensome for Carlson to litigate the instant motion in New York than in here in Western Pennsylvania. Moreover, even though the New York court will have greater familiarity with the coverage dispute, North American failed to demonstrate to this Court that the New York court has <u>already</u> ruled on discovery issues similar to the issues raised by Carlson's motion to quash. North American also failed to present evidence illustrating how the issues presented in these motions are likely to recur in other districts. Therefore, because North American has failed to meet its burden of proving that exceptional circumstances exist warranting transfer of Carlson's motion to quash, the Court will deny the motion to transfer. ECF 7.

The Court now turns to the motion to quash subpoena filed by Carlson. ECF 1. The Court will grant Carlson's motion to quash his subpoena.

North American claims it needs to depose to Carlson (and other attorneys who represented class members in the class action lawsuit) in order to assess whether its insured(s) RFC "colluded" with the class members to reach a settlement. ECF 6. If the insurers can prove that RFC colluded with the class action members, then the insurers denial of coverage may appear justifiable under the terms of their insurance contracts with RFC and any other related insureds. Id. According to North America, the only people who can testify as to whether RFC and the class members colluded, are the attorneys who were present at the RFC and PNC mediations.[3] Id. North America claims that Carlson represented class members in the RFC

---

[3] The RFC mediation was mediated by former Southern District of New York Bankruptcy Judge, James Peck. The PNC mediation was mediated by Dan Sandman. Although the PNC mediation itself did not result in a settlement,

resolution and was a "percipient witness and important figure . . . and highly knowledgeable about the PNC arbitration" and thus, needs to be deposed. Id.

Carlson argues that because the class action plaintiffs have already produced "all relevant nonprivileged documents and information to the insurance companies" in the New York adversary action/coverage case, there seems little to be gained by deposing Carlson or any attorney who represented class members over the years. ECF 2. He further claims that the attorney-client, mediation, and other privileges and protections shield him from providing testimony. Id. He explains that his participation in, and communications relating to the RFC and PNC settlements would be privileged and not discoverable in the New York adversary action/coverage case. Id. Importantly, Carlson notes that in 2013, when the RFC settlement was reached through mediation with Judge Peck, the bankruptcy court determined that the settlement was "reasonable" as part of its Fed.R.Civ.P. 23 and Fed.R.Bankr.P. 9019 analysis. Id. In addition, the bankruptcy court provided North American (and others) with an opportunity to object to the RFC settlement, noting that if it did not it would be barred from later challenging the reasonableness of that settlement. Id.

Although North American counters that Carlson's brief in support of his motion to quash "is riddled with [incorrect] 'facts'. . . ," it does not dispute Carlson's assertion that the bankruptcy court has already declared that the RFC settlement met the standard required for approval under Bankruptcy Rules 9019 (Compromise and Arbitration) and 7023 (Arbitration Proceedings). ECF 6. Additionally, North American does <u>not</u> dispute the following: (1) RFC invited North American and other insurers to participate in the resolution process long before the

---

the parties to the PNC mediation entered into a high/low agreement and resolved the matter through binding arbitration. North American wants Carlson to testify about matters surrounding the RFC mediation as well as the PNC mediation and arbitration.

11

RFC matter settled, but North American declined to do so; (2) United States Bankruptcy Court for the Southern District of New York, Judge Martin Glenn appointed former United States Bankruptcy Judge James M. Peck to mediate the RFC settlement; and (3) in 2013, the bankruptcy court allowed North American (and other insurers) the opportunity to object to the RFC settlement before the bankruptcy court entered its final order approving the settlement.  See ECF 2, p. 4 and ECF 6.  Thus, it appears to this Court that North American had opportunities to participate in the settlement process and thereby obtain the information it now seeks through the drastic means of deposing Carlson, an opposing attorney actively participating in the litigation.

This Court, "for good cause[,] may enter a protective order to prevent a deposition [of a party attorney] from being conducted." *Slater v. Liberty Mutual Ins. Co*., 1999 WL 46580 at *1 (E.D.Pa. Jan. 14, 1999).  In this case, the burden is on Carlson, as the moving party, to show good cause for entering a protective order.  See, *In re Tutu Water Wells Contamination*, 184 F.R.D. 266, 267 (D. Virgin Islands 1999) (*citing Musko v. McCandless*, *et. al*, 1995 WL 580275 (E.D.Pa.1995)).  "Good cause is established by showing that disclosure will cause prejudice" to Carlson as "the party seeking the protective order." *Tutu Water Wells*, 184 F.R.D. at 267 (*citing Falkenberg Capital Corporation v. Dakota Cellular, Inc*., 1998 WL 552966 (D.Del.1998)).  Carlson can successfully block his deposition if he "establishes undue burden or oppression" measured by: (1) the relative quality of information in Carlson's knowledge, that is, whether the deposition would be disproportional to the North American's needs; (2) the availability of the information from other sources that are less intrusive into the adversarial process; and (3) the harm to the class members' representational rights of their attorney if called upon to give deposition testimony.  *Johnston Development Group, Inc. v. Carpenters Local Union No*. 1578, 130 F.R.D. 348, 353 (D.N.J. 1990).

Under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action..." Although the attorney-client privilege and/or the work-product doctrine may provide grounds for Carlson to refuse to answer some or even <u>all</u> of the questions, the fact that Carlson is an attorney, "or even an attorney for a party to the suit, is not an absolute bar to taking his or her deposition." 8A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE, § 2102 (West 1994).  No special privilege or immunity shields an attorney of record. *Walter v. United Parcel Service*, 87 F.R.D. 360, 361 (E.D.Pa.1980). Indeed, "if the attorney possesses relevant, non-privileged information, that information ought to be discoverable just as it would be if possessed by a party or a nonparty*." Peerless Heater Co. v. Mestek, Inc.*, No. CIV. A. 98-6532, 2000 WL 151281, at *2 (E.D. Pa. Feb. 7, 2000), *citing Arias v. Philadelphia*, Civ. A. No. 97–6641, 1998 WL 398252, *1 (E.D. Pa. June 23, 1998).

However, the deposition of an attorney such as Carlson, "provides a unique opportunity for harassment, it disrupts the opposing attorney's preparation for trial, and could ultimately lead to disqualification of opposing counsel if the attorney is called as a trial witness*." Slater v. Liberty Mut. Ins. Co.*, Civ. A. No. 98–1711, 1999 WL 46580, *1 (E.D. Pa. Jan. 14, 1999) (*quoting Marco Island Partners v. Oak Development Corp.*, 117 F.R.D. 418, 420 (N.D.Ill.1987); *see also Musko v. McCandless*, 1995 WL 580275, *1 (E.D. Pa. Sept. 29, 1995) ("deposition of an attorney can often be burdensome and disruptive, and is not to be entered into unadvisedly or lightly.").

This Court concludes that North American should not be permitted to take the deposition of the Carlson, as the opposing party's attorney <u>unless</u> North American can definitively show that the information sought is relevant, non-privileged and critical to the preparation of the case

13

and that there is no other way to obtain the information." *Slater,* 1999 WL 46580 at *1; *see also Lebovic v. Nigro*, Civ. A. No. 96–319, 1997 WL 83735, *1 (E.D. Pa. Feb. 26, 1997) (deposition of opposing counsel is "typically only permitted where a clear need is shown"). In addition, this Court must carefully consider whether Carlson, as the party seeking the protective order, has shown "good cause by demonstrating a particular need for protection." *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986). Carlson can establish "good cause" by demonstrating that disclosure will work a "clearly defined and serious injury" to him. *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984). The alleged serious injury must be shown with specificity because "broad allegations of harm, unsubstantiated by specific examples or articulated reasoning," do not support a showing of "good cause." *Cipollone*, 785 F.2d at 1121).

Therefore, based on the foregoing arguments and the law and authority that this Court has carefully considered, the Court finds as follows:

First, Carlson, as the party seeking the protective order, has shown "good cause" by demonstrating a particular need for protection. Much, if not all, of the information sought by North American (see North American's brief in opposition to the Carlson's motion to quash (ECF 6) and its brief and reply brief in support of transfer (ECF 7, ECF 14)), is clearly protected by the attorney-client and mediation privileges as well as the work product doctrine. That said, there may be conversations Carlson had outside the presence of a mediator with opposing class action parties' counsel in order to pursue settlement; and thus, those communications may not be subject to Pennsylvania's statutory mediation privilege (but they may be subject to other protections). However, North American has had other opportunities to obtain the information it

seeks (including participating in the RFC settlement), and still has other avenues it can pursue to obtain the information – including debriefing its own insured(s)' counsel from the class action.

Next, Carlson is opposing counsel in the New York adversary action/coverage dispute which involves North American.  Thus, Carlson's roles as an underlying class action attorney and as a current opposing counsel in the adversary action/coverage dispute matter make his situation truly unique.  Although Carlson did not overtly articulate to this Court how disclosure of any non-privileged communication will work a "clearly defined and serious injury" to him, there can be no doubt that deposing him would require careful navigation of his past and present roles. Even with careful navigation, this Court notes that Carlson's deposition, provides a unique opportunity for harassment, and could ultimately lead to his disqualification as counsel if he is called to testify as a witness in the adversary action/coverage dispute.

Finally, this Court has considered:  First, the relative quality of information in Carlson's knowledge, that is, whether the deposition would be disproportional to the North American's needs.  The Court has determined that whatever knowledge Carlson possesses about the RFC settlement RFC's attorneys possess the same knowledge.  With respect to the PNC arbitration proceeding, the Court finds that the relevant information sought by North American is "of record" and therefore, available to North American.  The Court disagrees that there is relevant information with respect to the PNC settlement process that can be gained from deposing Carlson.[4]

Second, the Court considered the availability of the information from other sources that are less intrusive into the adversarial process, and as stated above, has found the information

---

[4] In addition, the Court notes that Because the settlement of the PNC action arose out of an arbitration following a mediation in Pennsylvania, communications related to the mediation would be subject to the Commonwealth of Pennsylvania's statutory mediation privilege.  See 42 Pa.C.S.A. § 5949.

readily available to North American.  In fact, North American itself in its brief in opposition to the motion to quash references billing records submitted (presumably by Carlson) to the bankruptcy court wherein daily settlement discussions are reported. Thus, North American is aware not only when settlement was discussed, but between and among whom, and generally the basis of those discussions. This enables North American to seek out the other parties to the settlement discussions – which will be their own insured(s) or North American's co-defendant insurers' insureds.

Third, the Court considered the harm to the class members' representational rights of their attorney if called upon to give deposition testimony.  As noted herein, Carlson, was the class members' lawyer in the class action lawsuit which spanned well over a decade and is currently representing them in their attempt to acquire settlement proceeds from the insurance carriers for the class action defendants.  To allow Carlson, their attorney in both of these complex matters, to be deposed with respect to the settlement processes in the class action would present a real risk of harm to the class members' rights.  Should Carlson be deposed and then called as a witness in the adversary action/coverage case the class members lose their attorney who possesses more than 16 years of working case knowledge in the class action matter.  Given that the information sought is – either completely or large part – not relevant and considering that North American can get the same information from its own insured(s) or the other insurers' insureds does not seem to justify the likely harm to the class members' representational rights of Carlson if he were called upon to give deposition testimony.

For all of these reasons, Carlson's motion to quash is **granted**.

## IV. CONCLUSION

Therefore, based on the foregoing law and authority and given the facts presented herein, the Court **GRANTS** Carlson's Motion to Quash Subpoena ([ECF 1](ECF 1)) and **DENIES** North American's Motion to Transfer to the United States District Court for the Southern District of New York.  [ECF 7](ECF 7).

        SO ORDERED, this 2nd day of April, 2021.

        s/ Arthur J. Schwab
        Arthur J. Schwab
        United States District Judge

cc:    All ECF Registered Counsel of Record